## GILLAM v. PARKER, Collector of Customs, et al.

District Court, E. D. South Carolina. April 18, 1927.

### No. 415.

**I. Courts ☞524—Bill for seizing vessel on high seas and unlawfully holding her will not lie, controversy involving maritime tort, within admiralty jurisdiction (Const. art. 3, § 2; U. S. C. tit. 28, §§ 41, 371 [Comp. St. §§ 991, 1233]).**

Bill against government officials for unlawfully seizing foreign vessel on high seas, bringing her into jurisdiction of court, and continuing to hold her unlawfully, will not lie in equity, since it involves maritime tort, which is within jurisdiction of admiralty, in view of Const. art. 3, § 2, and Judiciary Act 1789, as amended (U. S. C. tit. 28, §§ 41, 371 [Comp. St. §§ 991, 1233]).

**2. Courts ☞524—Owner or master of ship unlawfully seized on high seas may bring possessory action in admiralty.**

For unlawfully seizing foreign vessel on high seas, bringing her into port, and continuing to hold her unlawfully, owner or master is entitled to possessory action in admiralty to recover ship and cargo.

**3. Courts ☞524—Bill in equity will not lie against government officials for seizing and holding foreign vessel under claimed authority of revenue laws (U. S. C. tit. 28, §§ 41, 371, 747 [Comp. St. §§ 991, 1233, 1560]).**

Bill in equity will not lie against government officials for seizure and holding of foreign vessel under claimed authority of revenue laws, notwithstanding Rev. St. § 934 (U. S. C. tit. 28, § 747 [Comp. St. § 1560]), since seizures on navigable waters under laws of impost, navigation, and trade of United States are exclusively matters of admiralty jurisdiction, in view of Judiciary Act 1789, as amended (U. S. C. tit. 28, §§ 41, 371 [Comp. St. §§ 991, 1233]), and person cannot substitute remedy in equity for proceeding in condemnation by bringing bill in advance of libel proceedings.

**4. Courts ⬡⟹524—Bill In equity will not lie for unlawful seizure and holding of vessel, on ground that condemnation proceedings by government officials might be indefinitely delayed (U. S. C. tit. 28, § 747 [Comp. St. § 1560]).**

Bill in equity will not lie against government officials for unlawfully seizing and holding foreign vessel, on ground that condemnation proceedings by defendants might be indefinitely delayed, since plaintiff has ample relief under Rev. St. § 934 (U. S. C. tit. 28, § 747 [Comp. St. § 1560]), without resort to District Court as court of equity.

In Equity. Suit by Michael Gillam, master of the schooner Vinces, against S. M. Parker, Collector of Customs for the Port of Charleston, and others. Bill dismissed without prejudice.

See, also, 20 F.(2d) 164.

John I. Cosgrove and A. R. McGowan, both of Charleston, S. C., for plaintiff.

J. D. E. Meyer, U. S. Atty., of Charleston, S. C., for defendants.

ERNEST F. COCHRAN, District Judge. The plaintiff filed a bill in equity against the defendants and caused to be issued and served upon them a subpœna ad respondendum in the usual form. The bill alleges substantially that the plaintiff is the master of the schooner Vinces, a citizen of Newfoundland, Nova Scotia, and a subject of Great Britain; that the defendant Parker is the United States collector of customs for the port of Charleston, S. C.; that the defendant Meyer is the United States attorney for the Eastern district of South Carolina, actively in charge of prosecutions instituted by the United States in the district; and that the defendant Dunning is the prohibition co-ordinator for the Southeastern district of the United States, and actively in charge of prosecutions instituted by the United States for violations of the National Prohibition Act (Comp. St. § 10138¼ et seq.) and kindred statutes of the United States; that the Smart Shipping Company, Limited, of Halifax, Nova Scotia, a British subject resident at Halifax, Nova Scotia, is the owner of the schooner; that the schooner has on board a cargo manifested from St. Pierre Miquelon for Nassau, in the Bahamas; that the schooner is a registered British vessel; that on the 14th of March, 1927, while on a voyage, the plaintiff, the schooner, cargo, and crew were seized by the United States Coast Guard cutter Mascoutin on the high seas, without authority of the law of nations or the laws of any nation, at a point some 15 miles from the nearest land or point of the United States; that the seizure was made by an armed vessel and overwhelming force of armed men; that they are still detained by these armed forces; that the only claimed reason for the seizure is that the schooner and her cargo are being held for investigation; that more than 18 days have elapsed since the seizure, and no proceeding of any kind, even under color of law, has been instituted against the vessel, her cargo, the plaintiff, or the crew, nor has the plaintiff been advised more specifically of the reason of the detention, though repeated demands have been made upon the district attorney's office for their release.

The bill further asserts that no sufficient probable cause exists under which to bring a libel or other proceeding, as the schooner was not within the jurisdiction of the courts of the United States at the time of the seizure, and had not committed any violation of the laws of the United States, and that, if such libel or other proceedings are filed and the release of the schooner further delayed, a very great and irreparable loss will ensue upon the schooner, her cargo, and owners; that the plaintiff has been advised and believes that he cannot secure the release of the schooner and her cargo by giving bond or other security, and that he has no plain, adequate, and complete remedy at law. The bill prays that the vessel and cargo be released, and that process be directed to the defendants, ordering them to appear and show cause why the same should not be released, and that the defendants be restrained and enjoined from interfering with the schooner or her cargo, master, or crew, or instituting proceedings of any kind against the same.

[1] The defendants appeared solely and specially for the purpose of objecting to the jurisdiction of the court, and moved to dismiss the subpœna ad respondendum and bill of complaint, on the ground that the court was without jurisdiction, in that the alleged illegal seizure of the vessel is a maritime tort, and under article 3, § 2, of the Constitution of the United States and the Judiciary Act of 1789, as amended (title 28, §§ 41, 371, U. S. Code [Comp. St. §§ 991, 1233]), the United States District Courts in admiralty have exclusive jurisdiction.

It is to be observed that, while the defendants are designated as officers of the United States, with certain duties of prosecuting violations against the laws of the United States, there is no allegation that the seizure was made because of any claim of forfeiture of the vessel and cargo, or for any

violation of any law of the United States; and while it is alleged that the defendants have not proceeded to institute any legal proceedings, and have no probable cause therefor, there is no distinct allegation that the defendants, or any of them, claim any right to institute such proceedings. The case, therefore, presented by the bill, is simply that the defendants have unlawfully seized the vessel on the high seas and brought her into the jurisdiction of this court, and are continuing to hold her unlawfully, and the question is whether under such a state of facts the plaintiff has a remedy by a bill in equity to compel the restitution of the vessel and her cargo, or whether the court of admiralty has exclusive jurisdiction of such an action.

Upon the bald facts, as here presented, I do not entertain any doubt but that admiralty has jurisdiction. The facts as stated constitute a marine tort. The court of admiralty has jurisdiction over the whole subject-matter of tortious damage on the high seas or navigable waters of the United States, provided that the tort-feasor, whether man or vessel, later comes within the jurisdiction, or if the person has other property therein, so that proper service can be made and power exist to enforce the decree. 1 Benedict on Admiralty (5th Ed.) § 127. Ex parte Easton, 95 U. S. 68, 73, 24 L. Ed. 373; In re Fassett, 142 U. S. 479, 484, 12 S. Ct. 295, 35 L. Ed. 1087; Jervey v. The Carolina (D. C.) 66 F. 1013, 1016. Const. U. S. art. 3, § 2. U. S. Code, tit. 28, §§ 41, 371.

[2] For such an illegal seizure the party is entitled to a possessory action in admiralty to recover the ship and cargo. Such action is analogous to the action of replevin and detinue at common law, and is brought by the owners to try the right of possession to a ship, or by the master or owner to recover possession. Possessory suits may be brought in all cases to reinstate the owners of ships who have been wrongfully deprived of their property. 1 Benedict on Admiralty (5th Ed.) § 73. It is clear, therefore, that either the owner or the master may bring a suit in admiralty and obtain complete redress. The bill does not show any ground of equitable jurisdiction.

[3] It is argued, however, by the learned counsel for the plaintiff, that the defendants, as officers of the United States, are claiming to have made the seizure under the authority of the revenue laws of the United States, and that section 934 of the Revised Statutes of 1878 (U. S. Code. tit. 28, § 747 [Comp. St. § 1560]) declares that property so seized shall be irrepleviable, and that therefore there is no adequate remedy, and equity should assume jurisdiction. There are several answers to this contention. In the first place, there is no allegation in the bill, and nothing in the record now before the court, to show that the officers have made the seizure under any claim of authority under any revenue law. The bill proceeds upon an entirely different theory. As has been stated, it alleges simply that there has been a bald seizure, without any authority or claim of authority of law. But if I assume that the facts are as argued, and that the officers have seized the property in question under authority of a revenue law, nevertheless the bill would not lie. If the officers have seized the property and claim the same to be forfeited under the revenue laws of the United States, it would be their duty to proceed according to law for such forfeiture, which would be by instituting a libel for the condemnation thereof. All seizures made on navigable waters of the United States, under the laws of impost, navigation, and trade of the United States, are matters of admiralty jurisdiction, within the general grant of jurisdiction over "all civil causes of admiralty and maritime jurisdiction," and this jurisdiction is by the act of Congress made exclusive, saving, however, to suitors in all cases the right of a common-law remedy where the common law is competent to give it. 1 Benedict on Admiralty (5th Ed.) § 114; U. S. Code, tit. 28, §§ 41, 371.

When the libel is filed, the master, the owner, and all others who may be interested legally in the ship or the cargo will have ample opportunity in that proceeding to defend and assert their legal rights. It is not permissible for a person whose property is seized for violation of the revenue laws by an officer of the government to bring a bill in equity in advance of the due and proper institution of libel proceedings, and thereby substitute a remedy in equity for the ordinary proceeding for condemnation.

[4] It is also argued, however, that the officers might delay instituting condemnation proceedings indefinitely, and that therefore the bill would lie, and the plaintiff be entitled at least to an order requiring the officers either to institute proceedings within a definite time or release the property. It might be sufficient to say that the bill is not framed upon this theory. What this bill seeks is an adjudication that the seizure was unlawful, and that the property should be forthwith restored to the plaintiff, and the defendants

permanently enjoined from interfering with the plaintiff's possession. But, aside from this, I am of opinion that there is ample relief under section 934, R. S. 1878 (U. S. Code, tit. 28, § 747), without resort to the court as a court of equity. That section is as follows:

"All property taken or detained by any officer or other person, under authority of any revenue law of the United States, shall be irrepleviable, and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."

The evident object of this section was to prevent officers or other persons seizing property under the revenue laws from being harassed by suits for its recovery. In a case where the property is seized under a claim of forfeiture to the United States, the effect of this section is to bring it within the power of the court before the libel for condemnation is filed, because, after the libel is filed and the property seized, the property would then be in the custody of the law under the ordinary rule. When once seized under the claim that it has been forfeited to the United States, the property is from that time in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof.

In the present case, from the statements made by counsel for the plaintiff in argument, it is clear that the court having jurisdiction of the suit for condemnation would be the District Court in admiralty, and, if the officers making the seizure delay unreasonably to institute proceedings in the proper court, there can be little doubt that such court would have jurisdiction, upon proper petition setting forth the facts, to issue a rule against such officers requiring them to show cause why they should not proceed with the condemnation proceedings or abandon the property. When such petition is filed and such rule issued, the officers would have opportunity to be heard as to why the delay occurred. No such opportunity is afforded by a bill like the present, which seeks to have the property summarily taken from the officers and an injunction issued against them, restraining them from further proceedings. It is advisable that the officers should be given this opportunity, because in this case, and in many others where foreign ships are seized, the question at issue may be the subject of diplomatic correspondence and negotiations, which may cause delay, or there may be other sufficient reasons why the libel was not filed more promptly.

It is to be observed that section 934 does not make the property after seizure subject to the order *of any court,* but only of the court *having jurisdiction.* It is clear, therefore, that any application for an order in respect of such property must be made to the court which would have jurisdiction of the condemnation proceedings, and in this case that is the admiralty court, and not a court of equity.

This view of the powers of the District Court under section 934 is not without eminent judicial support. In the case of Standard Carpet Co. v. Bowers, Collector, Judge Learned Hand, in the District Court for the Southern District of New York, held that a forfeiture for seizures under the revenue laws must be determined by plenary suit, and that no summary application for restitution would lie, but that under section 934 the collector was amenable to the court before the goods were libeled, and that the court had power to prevent unjust delay and order the collector to proceed with the forfeiture or release the goods. It is to be noted that that case was not a bill in equity, but was a petition for a summary order. Standard Carpet Co. v. Bowers, Collector (D. C.) 284 F. 284.

The remarks of Mr. Chief Justice Marshall in the case of Slocum v. Mayberry are highly pertinent, although that case arose under the Embargo Act of April 25, 1808 (2 Stat. 499), and before section 934 was enacted. That case was a case of seizure by revenue officers under the Embargo Act, and an action of replevin was instituted to recover possession. The Chief Justice used the following language:

"The party supposing himself aggrieved by a seizure cannot, because he considers it tortious, replevy the property out of the custody of the seizing officer, or of the court having cognizance of the cause. If the officer has a right, under the laws of the United States, to seize for a supposed forfeiture, the question whether that forfeiture has been actually incurred belongs exclusively to the federal courts, and cannot be drawn to another forum; and it depends upon the final decree of such courts whether such seizure is to be deemed rightful or tortious. *If the seizing officer should refuse to institute proceedings to ascertain the forfeiture, the District Court may, upon the application of the aggrieved party, compel the officer to proceed to adjudication, or to abandon the sei-*

*zure."* (Italics mine.) Slocum v. Mayberry, 2 Wheat. 1, 9 (4 L. Ed. 169).

I am of opinion, therefore, that if the seizure in question was made, as the bill indicates, without any authority of law or claim of such authority, the plaintiff would have an ample remedy by a suit in admiralty. If, however, as has been asserted in argument, the officers have seized the property as forfeited to the United States for violation of the revenue laws, and are unreasonably delaying instituting condemnation proceedings, the plaintiff would have the right to apply by petition to this court for a rule against the officers to show cause why they should not proceed or abandon the property. While the bill must therefore be dismissed, it will be without prejudice in that respect.

It is therefore ordered, adjudged, and decreed that the bill in equity does not present any grounds of equitable jurisdiction, and that the same be and is hereby dismissed, without prejudice, however, to the right of the plaintiff or the owner to bring a suit in admiralty, or present a petition for an order requiring the defendants either to proceed with condemnation or abandon the same, as they may be advised.